**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: CV-_____**

| | |
|---|---|
| Richard W. Hall, Nona Hall, and N.H., as a minor child through his guardians, Richard W. Hall and Nona Hall,<br><br>　　　　　Plaintiffs,<br>vs.<br><br>Nelson, Watson & Associates, LLC, a foreign limited liability company, and Resurgent Capital Services, L.P. a foreign limited partnership,<br><br>　　　　　Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION**

1.　Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d) and further pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.　This action arises out of the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), Defendants' Invasion of Plaintiffs' Privacy, Defendants' Unauthorized Practice of Law, Defendants' Defamation of Plaintiffs, Defendants' Negligence, Defendants' Negligent Hiring, Defendants' Negligent Supervision and Defendants' Negligent Retention.

3.　Venue is proper in this District because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

**PARTIES**

4.    Richard W. Hall (hereinafter "Richard" or "Plaintiff") is a natural person residing in the County of Carver, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Nona Hall (hereinafter "Nona" or "Plaintiff") is a natural person residing in the County of Carver, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.    N.H., a minor child, who is ten-years-old and the son of Nona and Richard, (hereinafter "N.H." or "Plaintiff") is a natural person residing in the County of Carver, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7.    Defendant Nelson, Watson and Associates, LLC (hereinafter "Nelson"), upon information and belief, is a foreign limited liability company operating from an address of 80 Merrimack Street, Lower Level, Haverhill, Massachusetts, 01830, whose principal business is collecting debts and is therefore  a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8.    Defendant Resurgent Capital Services, L.P. (hereinafter "Resurgent"), upon information and belief, is a foreign limited partnership operating from an address of 75 Beattie Place, Greenville, South Carolina, 29601, whose principal business is collecting debts and is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

9.      Plaintiff allegedly incurred a financial obligation with Sears Retail Services, who is a creditor as that term is defined by 15 U.S.C. § 1692a(5).

10.     The alleged obligation was primarily for personal, family or household purposes, which is an alleged "debt" as that term is defined by 15 U.S.C § 1692a(5), namely a consumer debt.

11.     Sometime on or before February 28, 2009, the alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiffs.

*February 28, 2009 Telephone Call to Richard*

12.     On or about February 28, 2009, debt collectors employed by Nelson, contacted Plaintiff Richard by telephone in an attempt to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692(a)(2).

13.     During this call, John Doe (hereinafter "Doe"), who was employed by Nelson at all times relevant herein, contacted Richard to try and get Richard to enter into a repayment plan.  Richard agreed to discuss a repayment plan with the unknown debt collector from Nelson.

14.     In making this communication, Doe failed to provide Richard with the notice required by 15 U.S.C. § 1692e(11).

15.     During this communication, Doe proceeded to ask Richard for personal information, such as his name, address, income and monthly expenses.

16.     At this time, Doe asked Richard for a personal reference. Richard did not want to give Doe a personal reference because he did not want Doe, or any other debt collectors from Nelson, disclosing his financial problems to another person or contacting that person.

17.     Doe then said that he needed to speak to his "supervisor" because he was not sure that he could get a repayment plan approved without a personal reference.

18.     At this point, Doe's "supervisor" Rafael Llorens (hereinafter "Llorens"), who was employed by Nelson at all times relevant herein, began talking to Richard. Llorens told Richard that he had pulled a copy of Richard's credit bureau report and that Llorens saw that Richard had a revolving line of credit.  Llorens told Richard the he needed to authorize a transfer of this debt to Richard's credit card.

19.     Richard told Llorens that the credit card belonged to his wife and that he was only an authorized user. Richard said that he wanted to enter into a repayment plan and that he did not want to transfer this debt onto his wife's credit card.

20.     At this point, Llorens began to yell at Richard and whenever Richard attempted to talk, Llorens would yell louder.

21.     Llorens yelled at Richard and said that the only way this was going to work was if Richard paid the debt with his wife's credit card.

22.     Richard decided to end the telephone call because Llorens continued to yell at him and was otherwise abusive.

23.     After Richard ended the telephone call, Llorens called Richard six more times within a two hour period.

24.    Doe violated the FDCPA when he contacted Richard for the first time regarding this debt because he failed to provide the "mini-Miranda" as required by 15 U.S.C. § 1692e(11).

25.    Llorens violated the FDCPA when he began to yell at Richard and otherwise engaged in abusive conduct because his conduct was designed to harass, oppress and abuse Richard.  *See* 15 U.S.C. § 1692d and § 1692d(2).

26.    Llorens violated the FDCPA when he continued to call Richard an additional six times within a two hour period because he engaged in conduct with the intent to annoy, abuse and harass Richard.  *See* 15 U.S.C. § 1692d and § 1692d(6).

*February 28, 2009 Telephone Call to N.H. and Nona*

27.    On or about February 28, 2009, Llorens contacted N.H., Plaintiffs' ten-year-old son, by telephone in an attempt to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

28.    During this call, Llorens asked to talk to Nona.  N.H. told Llorens that Nona was not home. Nona was home but she was in the bathroom and he had been told by Nona to say she was unavailable.  However, N.H. accidently told Llorens that Nona was not home.

29.    Llorens asked for a babysitter or if there was someone else he could talk to. Llorens then said the following: "You can't be home alone and I don't want to have to call the police."

30.    N.H. suffers from extreme Attention Deficit Hyperactivity Disorder (ADHD). N.H. requires extensive counseling because he suffers from extreme ADHD.

31.  When Llorens told N.H. that he was going to call the police, N.H. became overwhelmed with fear and anxiety.  N.H. thought that the police were going to come and arrest his mother (Nona).

32.  N.H. did not want his mother (Nona) to get arrested so he ran to the bathroom screaming and he gave the phone to her.

33.  When Nona answered the phone Llorens told her it was imperative that Richard call him back or he would be forced to recommend that a lawsuit be filed against Richard.

34.  Llorens told Nona that if she was sued there would be a judgment and a lien against her home in the amount of $30,000.00.

35.  The amount of the alleged debt on or about February 28, 2009 was $9,885.62.

36.  Based upon information and belief, Llorens is not a licensed attorney in the State of Minnesota.

37.  Based upon information and belief, none of the employees at Nelson are licensed attorneys in the State of Minnesota.

38.  After Llorens threatened to get a judgment and a lien against her home for $30,000.00, Nona aksed Llorens why he was calling her.

39.  In response to this question, Llorens told Nona that he would stop trying to collect this debt if she authorized a $9,000.00 payment from her credit card.

40.  Nona told Llorens that she would not authorize the transfer of this debt to her credit card because she was unemployed and she would not have the income to make payments.

41. Nona then asked Llorens if she could call him back because she wanted to call her husband, Richard.

42. Llorens told Nona that she could not hang up the phone and that he would have to stay on the line while she called Richard.  Nona then ended the phone call.

43. Nona then explained to N.H. her ten-year-old son, why Llorens was calling.

44. N.H. became overwhelmed with fear and anxiety and began to cry because he thought Nona was going to jail and that his family was going to starve.

45. Llorens violated the FDCPA when he threatened to call the police because his conduct was designed to harass, oppress and abuse Plaintiffs.

46. As a direct and proximate result of Llorens telephone call, N.H.'s ADHD intensified.  He becomes overwhelmed with fear and anxiety if he were ever left alone inside the family's home because he thinks the police might show up or a debt collector might come looking for money.  Nona also had to shut off the ringer on her phone because the sound of the phone ringing scares N.H.

47. Llorens violated the FDCPA when he threatened to call the police because his conduct was designed to harass, oppress and abuse Nona and N.H.  *See* 15 U.S.C. § 1692d and § 1692d(2).

48. Llorens violated the FDCPA when he threatened to call the police because he threatened to take an action that cannot be legally taken and that was not intended to be taken.  *See* 15 U.S.C. § 1692e(5).

49. Llorens violated the FDCPA when he threatened to obtain a judgment and a lien against Plaintiffs' home in the amount of $30,000.00 because he misrepresented

the character, amount, legal status of this debt, and the compensation that may be lawfully received by a debt collector for the collection of this debt. *See* 15 U.S.C. § 1692e(2)(A) and § 1692e(2)(B).

50. Llorens violated the FDCPA when he threatened to obtain a judgment and a lien against Plaintiffs' home in the amount of $30,000.00 because he falsely represented and implied that he was an attorney. *See* 15 U.S.C. § 1692e(3).

51. Llorens violated the FDCPA when he threatened to obtain a judgment and a lien against Plaintiffs' home in the amount of $30,000.00 because he threatened to take an action that cannot be legally taken. *See* 15 U.S.C. § 1692e(5).

52. Llorens communication with N.H. and Nona on or about February 28, 2009 violated the FDCPA because he employed false, deceptive, abusive, unlawful, unfair and unconscionable means in an attempt to collect this debt from Plaintiffs. *See* 15 U.S.C. § 1692d, § 1692e, and § 1692f.

*February 28, 2009 Telephone Call to Kelly Haugland*

53. On or about February 28, 2009, Llorens contacted Plaintiffs' neighbor, Kelly Haugland (hereinafter "Haugland"), by telephone in an attempt to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692(a)(2).

54. Llorens contacted Haugland at 10:30 a.m. after he had already talked to Plaintiffs by telephone.

55. During this call, Llorens told Haugland that he worked for a law firm and that he had an emergency phone call for Plaintiffs. Llorens said he was unable to reach

Plaintiffs and he had Haugland take down his name, phone number and extension. Llorens then told Haugland again that this was an emergency and that it was important that Haugland get his message to Plaintiffs.

56.     Llorens' communication with Haugland violated the FDCPA when he contacted a person other than the consumer because he failed to follow the guidelines set forth in 15 U.S.C. § 1692b(1)—(3).

57.     Llorens' communication with Haugland violated the FDCPA because he contacted a third party without consent or the authority to contact a third person in connection with this debt.  *See* 15 U.S.C. § 1692c(b).

60.     Llorens' communication with Haugland violated the FDCPA because he employed false, deceptive, abusive, unlawful, unfair and unconscionable means in an attempt to collect this debt from Plaintiff.  *See* 15 U.S.C. § 1692d, § 1692e, and § 1692f.

*February 28, 2009 Letter*

61.     On or about February 28, 2009, Nelson wrote directly to Richard by U.S. mail in an attempt to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692(a)(2).  *See* Exhibit 1.

62.     Based upon information and belief, Nelson's initial contact with Plaintiffs in connection with this debt was on or about February 28, 2009.

63.     In this letter, Nelson wrote the following:

This writing will serve to confirm our agreement to settle your liability for less than the full balance owed on the above

referenced account(s) for the amount of $7,000.00. Funds

must be received in my office no later than the close of

business *February 28, 2009.*

*See* Exhibit 1 (emphasis added).

64.    This letter did not contain any of the language required by 15 U.S.C. § 1692g. *See* Exhibit 1.

65.    Based upon information and belief, Richard never agreed to any settlement agreement with Nelson or any of the debt collectors employed by Nelson.

66.    Based upon information and belief, Richard did not agree to any settlement agreement.

67.    Nelson's letter dated February 28, 2009 violated the FDCPA because it failed to include the written notice pursuant to 15 U.S.C. § 1692g.

68.    Nelson's letter dated February 28, 2009 violated the FDCPA because it overshadowed Richard's right to dispute this debt within thirty days pursuant to 15 U.S.C. § 1692g(a)(4) by requiring payment of the debt by February 28, 2009.

69.    Nelson's letter dated February 28, 2009 violated the FDCPA because it falsely represented that Richard and Nelson had entered into a settlement agreement. *See* 15 U.S.C. 1692e(10).

*March 1, 2009*

70.    Based upon information and belief, on or about March 1, 2009, John Roe (hereinafter "Roe"), who was employed by Nelson at all times relevant herein, contacted a third person by telephone in an attempt to collect this debt, which was

a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692(a)(2).

71.    On or about March 1, 2009, Plaintiffs' thirteen-year-old daughter, B.H., was stopped by an unidentified person while she was walking to her friend's house.

72.    This person stopped B.H., pointed toward her house and then asked if the Hall's lived in that house.

73.    B.H. told the identified person that the Hall's did live in that house.  That person then said that someone had called her and that she was supposed to deliver a message to the Halls.  The person said that she had a note inside her house for the Halls but that she needed to go somewhere else and she would bring the note by later.

74.    The unidentified person never brought the note to Plaintiffs' home.

75.    By contacting a third person other than Plaintiffs, Roe violated the FDCPA because it failed to follow the procedures set forth in 15 U.S.C. § 1692b(1)—(3).

76.    By contacting a third person Roe violated the FDCPA because it did not have permission from Plaintiffs to contact any other person in connection with this debt.  *See* 15 U.S.C. 1692c(b).

77.    Roe's communication with an unidentified third person violated the FDCPA because it employed false, deceptive, abusive, unlawful, unfair and unconscionable means in an attempt to collect this debt from Plaintiffs.  *See* 15 U.S.C. § 1692d, § 1692e, and § 1692f.

*March 5, 2009 Voicemail*

78.    On or about March 5, 2009, Ann Doe (hereinafter "Ann"), who was employed at all times relevant herein by Nelson, contacted Plaintiffs' directly by leaving voicemail in an attempt to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692(a)(2).

79.     During this voicemail, Ann said the following:

> My name is [unintelligible] calling from the law firm of Nelson, Watson and Associates.  Listen, I have been asked to make a determination on your behalf concerning a situation that warrants your immediate attention.  My decision will have to be made by 7:00 pm.  You will have until then to reach me.

80.    Ann then left her contact information.

81.    Based upon information and belief, none of the debt collectors or employees at Nelson are licensed attorneys in the State of Minnesota.

82.    Ann violated the FDCPA because she placed a voicemail without providing a meaningful disclosure.  *See* 15 U.S.C. § 1692d(6).

83.    Ann violated the FDCPA because she falsely represented and implied that she was an attorney.  *See* 15 U.S.C. § 1692e(3).

84.    Ann violated the FDCPA because she employed deceptive means in an attempt to collect this debt. *See* 15 U.S.C. § 1692e(10).

*Summary of FDCPA Violations*

12

85.   In an effort to collect this debt, Defendants' conduct and communications, as more fully described herein, constitute a violation of numerous and multiple provisions of the FDCPA, including, but not limited to, 15 U.S.C. § 1692b(1)—(3) § 1692c(b), § 1692d, § 1692d(2), § 1692d(6), § 1692e, § 1692e(2)(A), § 1692e(2)(B), § 1692e(3), § 1692e(5), § 1692e(10), § 1692e(11), § 1692g, § 1692g(a)(4) and § 1692f.

86.   Plaintiffs, and in particular, N.H., have suffered actual damages as a result of these illegal collection efforts and communications in the form of humiliation, anger, extreme anxiety, emotional distress, fear, frustration, and embarrassment, amongst other negative emotions.

87.   Plaintiffs have suffered out-of-pocket expenses as a result of these illegal collection efforts.

88.   The aforementioned acts and omission by Defendants constitute Invasion of Privacy by Intrusion Upon Seclusion, Defamation, Unauthorized Practice of Law, Negligence, Negligent Hiring, Negligent Supervision, and Negligent Retention.

*Respondeat Superior Liability*

89.   The acts and omissions of Defendant Nelson's employees, who were employed as agents by Defendant Nelson who communicated with Plaintiffs as more fully described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Nelson.

90.    The acts and omissions by Defendant Nelson's employees were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Nelson in collecting consumer debts.

91.    By committing these acts and omissions against Plaintiffs, Defendant Nelson's employees were motivated to benefit their principal, Defendant Nelson.

92.    Defendant Nelson is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including by not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this alleged debt from Plaintiff.

93.    The acts and omissions of Defendant Nelson, employed as an agent by Defendant Resurgent who communicated with Plaintiffs as more fully described herein, were committed within the time and space limits of its agency relationship with its principal, Defendant Resurgent.

94.    The acts and omissions by Defendant Nelson were incidental to, or of the same general nature as, the responsibilities this agent was authorized to perform by Defendant Resurgent in collecting consumer debts.

95.    By committing these acts and omissions against Plaintiffs, Defendant Nelson was motivated to benefit its principal, Defendant Resurgent.

96.    Defendant Resurgent is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including

but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this alleged debt from Plaintiff.

## **TRIAL BY JURY**

97. Plaintiff is entitled to and hereby demands a trial by jury. US Const. Amend. 7. Fed. R. Civ. Pro. 38.

## **CAUSES OF ACTION**

### **COUNT I.**

### **VIOLATIONS OF THE**
### **FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 ET SEQ.**

98. Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

99. The foregoing acts of the Defendants constitute distinct violations of the FDCPA against the Plaintiffs herein, including but not limited to each and every one of the above cited provisions of the FDCPA, 15 U.S.C § 1692 et. seq.

100. As a result of said violations, Plaintiffs have suffered actual damages in the form of humiliation, anger, extreme anxiety, emotional distress, fear, frustration, and embarrassment, amongst other negative emotions and out-of-pocket expenses. Plaintiffs are therefore entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1) of the FDCPA.

101. As a result of said violations, Plaintiffs are entitled to statutory damages of $1,000.00 from each and every Defendant, and for Plaintiffs' attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(2)(A) and 15 U.S.C. § 1692k(a)(3).

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

102.   Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

103.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> *Abusive debt collection practices contribute* to the number of personal bankruptcies, to marital instability, to the loss of jobs, and *to invasions of individual privacy*.

> 15 U.S.C. § 1692(a) (emphasis added).

104.   Defendants intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiffs.

105.   Defendants intentionally and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' rights to privacy.

106.   Plaintiffs had a reasonable expectation of privacy in their solitude, seclusion, and private concerns or affairs.

107.   The conduct of Defendants in engaging in the above-described illegal attempts to collect this debt, resulted in multiple intrusions and invasions of privacy by Defendants, which occurred in a way that would be highly offensive to a reasonable person in that position.

16

108. As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendants under the doctrine of Respondeat Superior liability.

## COUNT III.

## DEFAMATION

109. Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

110. Defendants communicated to several parties including Plaintiffs' neighbors that Plaintiffs were in serious default on this debt.

111. Defendants' communications, acts and omissions resulted in defamation of the Plaintiffs.

112. Defendants' communications, acts and omissions harmed the reputation of a Plaintiffs.

113. Defendants' communications were the type that would and/or did deter third persons from associating or dealing with Plaintiffs.

114. Defendants' communications were they type that would injure Plaintiffs' character, or subject them to ridicule, contempt, distrust, or would degrade them in the eyes of another.

115. Plaintiffs have been seriously damaged as a result and are entitled to their damages, costs and attorneys fees.

## COUNT IV.

## UNAUTHORIZED PRACTICE OF LAW

## MINN. STAT. § 481.02

116.   Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

117.   Defendants foregoing acts as described herein in attempting to collect this alleged debt by the false threat of suit in Minnesota State District Court constitutes the unauthorized practice of law in Minnesota.

118.   Plaintiffs are therefore entitled to declaratory relief pursuant to Minn. Stat. § 481.02 subdiv. 8 and § 8.31 subdivs. 2 and 3a, declaring Defendants action as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02.

119.   Plaintiffs are therefore entitled to injunctive relief pursuant to Minn. Stat. § 481.02 subdiv. 8, and § 8.31 subdivs. 3 and 3a, enjoining Defendants from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02.

120.   Plaintiffs are therefore entitled to Plaintiffs' attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subdiv. 8, and § 8.31 subdivs. 3 and 3a.

## COUNT V.

## NEGLIGENCE

121.   Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

122.   Defendants owed Plaintiffs a duty to ensure that they maintained proper procedures when collecting debts.

123. Defendants either intentionally, deliberately or in the alternative, negligently breached their duty to Plaintiffs.

124. As a result of Defendants' breaches of their duties, Plaintiffs have suffered damages and out-of-pocket losses, as thoroughly and specifically detailed above.

125. Defendants' breaches were the actual and proximate cause of the damages suffered by Plaintiffs.

126. Plaintiffs have been seriously damaged as a result and are entitled to their damages, costs and attorneys fees.

## COUNT VI.

## NEGLIGENT HIRING

127. Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

128. Defendants owed Plaintiffs the duty of hiring individuals appropriate for the job.

129. Defendants were negligent in its hiring of employees.

130. Defendants knew or should have known that its employees posed a threat of harm to others.

131. Plaintiffs were harmed as a result of the employees hired by Defendants and their failure to properly handle collection of this debt from Plaintiffs.

132. Plaintiffs have been seriously damaged as a result and are entitled to their damages, costs and attorneys fees.

## COUNT VII.

## NEGLIGENT SUPERVISION

133.   Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

134.   Defendants owed Plaintiffs a duty in its supervision of its employees.

135.   Defendants were negligent in its supervision of its employees.

136.   Defendants failed to use reasonable care to supervise the activity of its employees.

137.   The acts and omissions of Defendants' employees posed a threat of harm to the Plaintiffs or others.

138.   Plaintiffs were harmed by Defendants' negligent supervision.

139.   Plaintiffs have been seriously damaged as a result and are entitled to their damages, costs and attorneys fees.

## COUNT VIII.

## NEGLIGENT RETENTION

140.   Plaintiffs incorporate by reference each and every above paragraph as though fully stated herein.

141.   Defendants owed a duty to Plaintiffs in its retention of its employees.

142.   Defendants were negligent in its retention of its employees involved in Plaintiffs' case.

143.   Defendants knew or should have known that the employees posed a threat of harm to others.

144.   Defendants failed to take reasonable action to ensure that its employees were appropriate for the jobs they were enlisted to do.

145.   Plaintiffs were harmed by Defendants' negligent retention of these employees.

146.  Plaintiffs were harmed by Defendants' negligent supervision of these employees.

147.  Plaintiffs have been seriously damaged as a result and are entitled to their damages, costs and attorneys fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter the following judgments, in Plaintiffs' favor:

## COUNT I: FDCPA VIOLATIONS

- For declaratory and injunctive relief;

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant;

- For actual damages from each and every Defendant for the emotional distress suffered and out-of-pocket expenses incurred as a result of the FDCPA violations in an amount to be determined at trial;

- For an award of statutory damages of $1,000.00 for the Plaintiffs herein, for violations of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A), against each and every Defendant;

- For an award of costs and reasonable attorneys' fees under the FDCPA pursuant to 15 U.S.C. § 1692(a)(1) and 15 U.S.C. § 1692k(a)(3), against each and every Defendant, for Plaintiffs herein;

## COUNT II: INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

- For an award of actual and compensatory damages from Defendants for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasions of privacy in a reasonable amount in excess of $50,000.00; and

- For such other and further relief from Defendants as may be just and proper.

### COUNT III: DEFAMATION

- For actual and compensatory damages for Defamation in a reasonable amount in excess of $50,000.00, against all Defendants;

### COUNT IV: UNAUTHORIZED PRACTICE OF LAW MINN. STAT. § 481.02

- Declaring Defendants' actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- Enjoining Defendants from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- Awarding Plaintiffs' attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subdiv. 8, and § 8.31 subdivs. 3 and 3a;

### COUNT V: NEGLIGENCE

- For actual and compensatory damages for Negligence in a reasonable amount in excess of $50,000.00, against all Defendants;

### COUNT VI: NEGLIGENT HIRING

- For actual and compensatory damages for the Negligent Hiring of its employees against Defendants, in a reasonable amount in excess of $50,000.00;

## COUNT VIII: NEGLIGENT RETENTION

- For actual and compensatory damages for the Negligent Retention of its employees against Defendants, in a reasonable amount in excess of $50,000.00;

## SUCH OTHER RELIEF

- For Plaintiffs to be awarded Costs of Litigation and Attorneys' Fees against each and every Defendant under each of the allegations herein; and

- For such other and further relief as may be just and proper.

Dated:  October 30, 2009.          MARSO AND MICHELSON, P.A.

By: _s/Patrick L. Hayes_
    Patrick L. Hayes
    Attorney for Plaintiff
    Attorney I.D. No.:0389869
    3101 Irving Avenue South
    Minneapolis, Minnesota 55408
    Telephone: 612-821-4817

Dated:  October 30, 2009.          MARSO AND MICHELSON, P.A.

By: _s/William C. Michelson_
    William C. Michelson
    Attorney for Plaintiff
    Attorney I.D. No.: 129823
    3101 Irving Avenue South
    Minneapolis, Minnesota 55408
    Telephone: 612-821-4817